May Term,
1858.

The Indianapolis and Cincinnati Railroad Company *v.*
Love.

The Indian-
apolis, &c.,
Railr'd Co.

v.
Love.

In a suit against a railroad company, by an employè engaged as an engineer
in running a train upon the road, to recover for injuries sustained in such
service, the plaintiff must allege and prove negligence on the part of the
company, by means whereof the injury was caused.

There is no implied warranty, generally, of the completeness or fitness of the
road or rolling stock, as between the company and their employès.

But there are many exceptions. For instance, if a defect existed in the road
which was known to the company, but which it was impossible for them to
remove immediately, and in consequence of such defect the road was unsafe
but not impassable, and yet they should suffer an employè, in ignorance of
the defect, to attempt to pass upon the road, and injury should thereby re-
sult to him, the company would be liable. So, on the other hand, if the
employè had knowledge of the defect, and the employers had not, the latter
would not be liable. And where both parties had such knowledge, each
takes the risk, unless the company undertake to give special directions as to
the mode of operating.

Whether it is the duty of the company or of their engineer to see to and keep
in safe condition a crossing, or other unsafe point on a railroad, is a ques-
tion of fact for the jury.

*It seems,* that where an injury to an employè of a railroad company resulted
from his own negligence or carelessness, in failing to discharge some reason-
able duty; or where the employè and the company were equally to blame
for the injury, the company is not liable.

Saturday,
June 26.

APPEAL from the *Shelby* Circuit Court.

Hanna, J.—*Love* sued the appellants, and alleged that
on the first of *March,* 1854, he was in the employment of
the said company as engineer, and whilst so engaged in
running an engine, &c., the same "ran off the track, in
spite of the reasonable care and diligence of the plaintiff,
and which running off was in consequence of the imper-
fect and insufficient connection of the track where the said
track crossed other tracks—the defendants being bound to
keep said track in good running condition;" and that his
leg was unavoidably crushed, &c.

Demurrer to the complaint, assigning two causes—

1. That it does not state facts sufficient, &c.

2. That it shows that the plaintiff was in the employ-
ment of the defendants, &c.; and therefore, &c.

The demurrer was overruled, and the defendants there-
upon answered in four paragraphs.

Reply filed. Trial by a jury. General verdict for the
plaintiff; and also, at the request of the defendants, a spe-
cial finding upon particular questions of fact. Motion for
a new trial overruled. Judgment for the plaintiff for 3,000
dollars.

The first error assigned is upon overruling the demurrer
to the complaint. The appellants contend that the plain-
tiff being in the employment of the company as an engi-
neer in running a train over their road, he must be presumed
to know the condition of the road, and to have undertaken
to run the risk. To this proposition the plaintiff replies
that his theory of the case is that the defendants employed
him as engineer to run a locomotive on a track reasonably
fit and safe for the purpose, and by the contract of hiring
it was implied and contemplated that he would take all the
necessary and incidental risks of that particular service,
whilst it was implied and contemplated that the defend-
ants should furnish a track embracing bridges, culverts,
switches and crossings reasonably fit and safe for the pur-
pose.

It is further argued by the appellants, that the complaint
should not only aver that the defendants had knowledge of
the condition of the road, but should also negative a like
knowledge on the part of the plaintiff. To this, the plain-
tiff answers that this is, so far as it can affect the case, a
matter of defense which the plaintiff is not bound to anti-
cipate in his pleadings.

We think the demurrer should have been sustained for
the first cause assigned.

In a suit against a railroad company by an employé en-
gaged in running a train upon the road, for injuries sus-
tained in such service, the proposition is so reasonable that
he should be required to allege and prove negligence upon
the part of the company, by means whereof the injury was
brought about or caused, that we cannot conceive any other
rule would be equally just between the parties.

We do not, as is insisted in argument, think that there

May Term,
1858.

THE INDIAN-
APOLIS, &C.,
RAILR'D CO.
v.
LOVE.

is any implied warranty, generally, of the completeness or fitness of the road or rolling stock, as between the employer and employès.

It is almost impossible to lay down any general rule upon the subject, that circumstances might not exist making a case an exception to. For instance, as a partial exception to the above proposition, if a defect existed in the road which was known to the company, but which it was impossible for them to immediately remove or remedy, and in consequence thereof the road was unsafe but not impassable, and yet they should place an employè upon the road, and suffer him, in ignorance of said defect, to attempt to operate it, and injury should thereby result to him, certainly there would be a liability. So, to the reverse, if the employè had knowledge of the defect, and the employer had not, we suppose such employer would not be liable. And a still more difficult question would be presented where both parties had this knowledge, and injury should result from an attempt to operate the road. In this latter instance we think the true rule of decision is, that each party takes the risk, unless the employer undertakes to give special directions as to the mode of operating. Then, if, in following those directions, injury should result, by reason of adhering to such directions, liability would attach.

The reason in such cases is, that upon knowledge being brought home to the employè that a cause exists making the service more than ordinarily unsafe, he is at liberty to require the cause to be removed, or defect remedied, and if that were not done, he might quit the service without incurring loss or legal liability. But if instead of removing the cause or applying the remedy to the defect, the employer undertakes to give special directions, &c., he would thereby assume the risk, whilst the employè was in the discharge of those directions.

It follows, therefore, that the complaint is insufficient, if for no other reason, because of the want of an allegation of negligence or want of care upon the part of the company in the construction of the road, or that they had knowledge or notice of its imperfection, and notwithstanding

continued to use it, or some averment equivalent to such charge of negligence.

The imperfect connection of the track might have existed in consequence of internal and invisible defects in the materials employed, which had escaped the closest scrutiny and set at naught the exercise of the utmost care and diligence of the company.

The second cause assigned in the demurrer is based upon the assumption, attempted to be maintained in the brief, that an employé cannot recover of his employer for injuries received whilst in such employment.

The proposition is too broad. There are many cases in which such actions have been maintained—among others the following: *Fitzpatrick* v. *The New Albany, &c., Railroad Co.*, 7 Ind. R. 436; *Gillenwater* v. *The Madison, &c., Railroad Co.*, 5 *id.* 339; *The L. M. Railroad Co.* v. *Stevens*, 20 Ohio R. 415; *Keegan* v. *The Western Railroad Co.* 4 Selden, 175; *Noyes* v. *Smith*, 28 Vermont R. 59. And see Redfield on Railways, 387.

The next error assigned is upon the ruling of the Court in giving and refusing instructions. The instructions asked and refused are, in many particulars, similar to those given. Such refused instructions will not therefore be noticed in detail. One position assumed by defendants, and which was not covered by the instructions given, was, that if the crossing was unsafe except at slow speed, and known to the plaintiff to be so, it was his duty, as engineer and manager of a train, to see "that the track, the movable chairs and rails at that place were in their proper place and as safe as they could be made by putting the movable rails and chairs carefully in their proper places, and if plaintiff failed to do so, and ran his train on the crossing without knowing whether the movable rails and chairs were properly placed or not, &c., he would be guilty of negligence, and could not recover."

Instead of the above instruction, the principle of which was asked in several forms, the Court told the jury that it was proper for them to determine from the evidence whose duty it was to keep the track in proper order at the cross-

*May Term, 1858.*

*The Indianapolis, &c., Railr'd Co. v. Love.*

May Term,
1858.

THE INDIAN-
APOLIS, &C.,
RAILR'D CO.
v.
LOVE.

ing, and if they found that it was the duty of the defend-
ants to do so, and not the duty of the plaintiff, and if the
plaintiff exercised due care and skill, &c., and had good
reason to believe that the chairs and rails were in a safe
condition, &c., then the plaintiff would be entitled to re-
cover, if the crossing was unsafe, &c.

In effect, the instruction given assumed that it was a
question of fact for the jury to determine whether it was
the duty of the plaintiff to do certain things, whilst that
refused treated it as a question of law, fixing the duty upon
the plaintiff.

There were other instructions asked by the defendants
and refused, to the effect that if the plaintiff by his careless-
ness or negligence contributed to produce the injury, he
could not recover.

The instruction given upon this point was, that if the
injury was brought about by the carelessness or negligence
of the plaintiff in failing to discharge any reasonable duty;
or if the plaintiff and defendants were equally to blame for
the injury, the finding should be for the defendants.

The facts, as shown by the evidence, upon which these
questions arose, were, in substance, that the defendants, in
the construction of a railroad, crossed the tracks of two other
railroads, where the tracks of those roads were near to each
other, and near their junction—so near that one rail would
reach across both tracks; that for some weeks previous to
the injury complained of, the locomotive, cars, &c., of the
defendants had been run across and over the tracks of the
other two roads several times each day, by means of de-
tached rails which could be taken up and laid down at
pleasure, and secured, so far as they were secured, by a
wrought piece of iron, called a chair, at each end; that they
were put down to pass the cars, &c., of defendants, and re-
moved that they might not obstruct the passage of cars,
&c., on the other two roads; that the plaintiff, who was the
engineer in charge of a construction train—there being no
conductor on it—had passed this crossing in this manner
with his train many times.

The evidence was conflicting as to whether such mode

of arranging a crossing was safe at any time, under the most favorable view of it; and it was also conflicting as to the duty of the engineer, having in charge a locomotive, in reference to the examination of the manner in which the rails were placed and fastened at each time he might cross. There was also some slight conflict as to whether the plaintiff had, at the particular time of the injury, approached the crossing in the most skillful and careful manner.

It was a question of fact, for the jury to determine from the evidence, whether it was a duty incumbent upon the plaintiff to see to and maintain the road, at that particular point, in proper order. The ruling of the Court upon instructions involving that point was therefore correct.

The instruction asked and refused upon the subject of negligence, did not embody the law, for the reason that it would prevent a recovery if the plaintiff had contributed, however remotely, to produce the injury, by his negligence, notwithstanding it might have been produced by the immediate carelessness of the defendants. The instruction given is nearer the rule laid down by this Court in the case of *The Indianapolis, &c., Railroad Co.* v. *Caldwell,* 9 Ind. R. 298.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

DAVISON, J., was absent.

*W. J. Peaslee* and *J. Ryman,* for the appellants.

*M. M. Ray,* for the appellee.

(1) Mr. *Peaslee* cited the following authorities: The plaintiff being in the employment of the company as an engineer in running a train over the road, he must be presumed to know the condition of the road, and to have undertaken to run the risk. 4 Met. 49.—*Farwell* v. *The Boston, &c., Railroad Co., id.* 36.—1 Am. Railr. Cases, 339.—*Hayes* v. *The Western Railroad Co.* 1 Am. Railr. Cases, 564, 568, and notes.

(2) Mr. *Ray* cited the following authorities: The master may be liable to his servant for an injury resulting from the negligence of the master. 24 Vt. R. 487.—4 Seld. 175.—5 Ind. R. 467.—19 Conn. R. 566.—5 Ind. R. 339.—7 Ind. R. 474.—13 Ill. R. 585.—15 *id.* 468.—3 Ohio R. (N. S.) 201.—16 Barb. 353.—7 Ind. R. 437.

If the fault be equal the servant cannot recover; and the degree of negligence in either master or servant, or both, is a question for the jury. 5 Ad. & El.

May Term,
1858.

THE EVANS-
VILLE, &C.,
RAILR'D CO.
v.
COCHRAN.

747.—4 Met. 49.—27 Vt. R. 49 to 62.—23 *id.* (8 Washb.) 387.—21 Barb. 339.—24 Eng. Law & Eq. R. 396.—10 N. Hamp. R. 188.—21 N. Jersey R. (9 Harris.) 203.—3 Eng. Law & Eq. R. 473.—2 Railw. Cases, 114.